

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. S. Murchison
Executive Director
State Department of Public Welfare
Austin, Texas

Dear Sir:

Opinion No. O-3551
Re: (1) Whether warrants may be
immediately drawn against the
"Blind Assistance Fund" and
the "Childrens' Assistance
Fund" as created by H. B. 8
for the purpose of setting
up administrative machinery.
(2) When assistance grants
to needy blind and dependent
children may first be made.

We are pleased to comply with your request for our
opinion on the above questions submitted by your letter of May
14, 1941. Since your letter so clearly presents the problems
involved, and sets out the provisions of the statutes applica-
ble thereto, we shall quote your letter in full:

"As Executive Director of the State De-
partment of Public Welfare, I respectfully
present the following statement of fact and
law and ask to be advised regarding the ques-
tions raised.

"House Bill No. 8, as passed by the
Forty-seventh Legislature, provides, among
other things, that the Comptroller of Public
Accounts and the Treasurer of the State of
Texas shall set up a 'Clearance Fund'; and
that a portion of the taxes collected under
said House Bill No. 8 shall be allocated from
this 'Clearance Fund' for certain specified
purposes, two of which are as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"'Art. XX, Sec. 2, (1) There shall be appropriated and allocated, transferred, and credited to a special fund in the Treasury, to be known as the "Blind Assistance Fund," for the purpose of providing and administering assistance to the blind in the manner as authorized by Senate Bill No. 36, Acts of the Regular Session, Forty-sixth Legislature, 1939, such part of Four Hundred Thousand Dollars ($400,000) as the effective period of this Act for the fiscal year ending August 31, 1941, bears to the entire fiscal year, and there shall be transferred and credited to such fund the sum of Four Hundred Thousand Dollars ($400,-000) for each fiscal year thereafter, said amount to be provided on a basis of equal monthly installments.

"'(2) There shall be appropriated and allocated, transferred and credited to a special fund in the Treasury, to be known as the "Childrens' Assistance Fund," for the purpose of providing and administering assistance to dependent and destitute children in the manner as authorized by Senate Bill No. 36, Acts of the Regular Session, Forty-sixth Legislature, 1939, such part of One Million, Five Hundred Thousand Dollars ($1,500,000) as the effective period of this Act for the fiscal year, and there shall be transferred and credited to such Fund One Million, Five Hundred Thousand Dollars ($1,500,000) for each fiscal year thereafter, said amount to be provided on a basis of equal monthly installments.'

"Section 9, the closing or emergency clause of House Bill No. 8, 47th Legislature, states that the Act shall take effect and be in force from and after the date of its passage. Both subsections (1) and (2) of Section 2, Art. XX of this Act use the expression 'providing and administering assistance . . . . in the manner as authorized in Senate Bill No. 36, Acts of the Regular Session, Forty-sixth Legislature, 1939.' Senate Bill No. 36, Acts of the Forty-sixth Legislature, contains among other

things, the following provisions:

"'Sec. 5. The State Department shall be charged with the administration of the welfare activities of the State as hereinafter provided. The State Department shall: a. administer aid to needy dependent children, assistance to needy blind, and administer or supervise general relief; . . . . . . d. Cooperate with the Federal Social Security Board, created under Title 7 of the Social Security Act enacted by the Seventy-fourth Congress and approved August 14, 1935, and any amendments thereto, and with any other agency of the Federal Government in any reasonable manner which may be necessary to qualify for Federal aid for assistance to persons who are entitled to assistance under the provisions of that Act . . . . . . g. Establish and provide such method of local administration as is deemed advisable and provided such personnel as may be found necessary for carrying out in an economical way the administration of this Act . . . . . . ' (underscore ours).

"For the State Department to put into operation the programs for aid to dependent children and aid to the blind, and to obtain Federal aid for these programs as directed by Senate Bill No. 36, 45th Legislature, Regular Session, it will be necessary that a State Plan of Operation be drafted. This plan must include the rules of eligibility, the fiscal procedures, investigational procedures, and an outline of the method of administration to be followed by the Department. To obtain Federal aid, this plan must be approved by the Social Security Board before it can be put into operation, and after such approval, it will be necessary that the State Department employ and train proper personnel, and make factual investigations of all applications before any assistance payments can be made under either the program for dependent children or the program for aid to the blind.

"In addition to the provisions in Senate Bill 36, 45th Legislature, Regular Session, as quoted above, there are outlined in various sections of this Act certain specific administrative functions that must be performed by the State Department before the dependent children and blind

Honorable J. S. Murchison, Page 4

programs can be put into operation. The Act also contains the following provisions:

"'Sec. 34. The purpose of this Act is to inaugurate a program of social security and to provide necessary and prompt assistance to the citizens of this State who are entitled to avail themselves of its provisions. This Act shall be liberally construed in order that its purposes may be accomplished as equitably, economically and expeditiously as possible.' (underscore ours).

"'Sec. 40. It is provided that no grants of aid and assistance shall be made to any needy blind person or for the benefit of any dependent and destitute child until the expiration of ninety (90) days after the effective date of any revenue Act or Acts that may be passed by the Legislature making funds available to be used for the purposes of granting such aid and assistance.' (underscore ours).

"House Bill No. 8, Acts of the 47th Legislature, was passed and signed by the Governor on May 1, 1941, and, therefore, it became effective on that date. The Act appropriated and allocated to the 'Blind Assistance Fund' one-twelfth of $400,000, monthly, beginning May 1, 1941; the Act also appropriated and allocated to the 'Childrens' Assistance Fund' one-twelfth of $1,500,000, monthly beginning May 1, 1941. Considering the facts outlined above, we respectfully request your opinion on the following questions:

"1. May the Comptroller of Public Accounts and the State Treasurer immediately honor warrants drawn against the 'Blind Assistance Fund' as created by House Bill 8, Acts of the 4 th Legislature, Regular Session, for the purpose of establishing and setting up the administrative machinery necessary for the aid to the blind program if sufficient monies are in this fund?

"2. May the Comptroller of Public Accounts and the State Treasurer immediately honor warrants drawn against the 'Childrens' Assistance Fund' as

created by House Bill No. 8, Acts of the
Forty-seventh Legislature, Regular Session,
for the purpose of establishing and setting
up administrative machinery necessary for a
program for dependent children if sufficient
monies are in this fund?

"3. May the State Department of Public
Welfare make payments of assistance grants to
the needy blind and neglected dependent child-
ren prior to August 1, 1941?

"It is the desire of this Department to
begin immediately to establish an administra-
tive organization, to procure necessary printed
forms, to promulgate necessary rules and regula-
tions for the efficient administration of the
Law providing aid to the needy blind and to
neglected dependent children. An early opinion
on the questions herewith submitted will be
greatly appreciated."

The first problem which presents itself in connection
with the questions you have asked is whether subparagraphs (1)
and (2) of Section 2, Article 20 of House Bill No. 8, quoted by
you in your letter may be construed to be appropriations of
money for the purposes therein designated or whether they mere-
ly constitute allocations or dedications of money to a specific
fund in the treasury. Let us consider subparagraph (1) relating
to aid to the needy blind, the last part of which reads as fol-
lows:

"* * * and there shall be transferred and
credited to such Fund the sum of Four Hundred
Thousand Dollars ($400,000.00) for each fiscal
year thereafter. * * *."

Several things are to be noted in connection with this
provision: (1) the word "appropriate" is not used; instead the
direction is couched in the future tense, that the money "shall
be transferred and credited to such fund," and no direction is
made by the Legislature to take the money out of such fund in
the treasury. (2) It is to be noted that there is no limitation
as to time in this clause. In attempting to construe this pro-
vision as an appropriation we must bear in mind Article VIII,
Section 6 of the Texas Constitution which provides, in part:

"* * *; nor shall any appropriation of
money be made for a longer time than two years,
* * *."

A similar problem of construction was before the
Supreme Court of Texas in Pickle v. Finley, 91 Tex. 484, 44 S.W.
484, wherein it was contended that "the law which created the of-
fice of stenographer fixed the compensation at Twelve Hundred
Dollars per annum, was itself in an appropriation." Chief Jus-
tice Gaines speaking for the court in construing this statute and
holding that the same was not an appropriation declared:

"If Article 1012 of the Revised Stat-
utes makes an appropriation for the payment
of the salaries of the stenographers of the
courts of civil appeals it is an unlimited
appropriation. There is not a word to in-
dicate that it was the purpose to restrict
its operation to the term of two years.
Therefore, to presume that the Legislature
intended by that provision, not only to fix
the salary of the office, but also to make
an appropriation for its payment, is to
presume that their purpose was to do that
which the Constitution forbids. This can-
not be presumed, unless the language be so
clear as to admit of no other construction."

In Dallas County v. McCombs, 140 S. W. (2d) 1109, the
Texas Supreme Court declared unconstitutional the general tax
remission bill for the reason, in part, as stated by Justice Critz
at page 1110:

"To our minds, the attempt to grant
or donate the State taxes above described
for a period of five years to the various
counties of this State provided in the Act,
violates both the spirit and the letter of that
part of Section 6 of Article VIII, supra, which
prohibits the Legislature from making an ap-
propriation for a longer term than two years.

"Plaintiff in error contends that even
if this appropriation running for five years
is in violation of the two years' provision of
Section 6 of Article VIII of our Constitution as
applied to the five year period taken as a whole,
still is not in violation of such constitutional
provision as applied to the first two years of
the five year period. It seems to be the law that
where the Legislature has made 'an appropriation
in unmistakable terms,' which continues for a

Honorable J. S. Murchison, Page 7

longer period than two years, such appropriation may be upheld for the first two years, and would be inoperative thereafter. Pickle v. Finley, 91 Tex. 484, 44 S. W. 480, 482. It will be noted that the rule of law announced in Pickle v. Finley, supra, contemplates that that appropriation shall be made 'in unmistakable terms.' We interpret this to mean that if an appropriation is made for more than two years, it can be enforced for the first two years if it appears that the Legislature undoubtedly intended such appropriation to operate for two years, regardless of whether or not it could do so thereafter. We think that this rule cannot aid this appropriation, because when all of the provisions of this Act are considered together, we cannot say that the Legislature would undoubtedly have passed it to operate for two years only, instead of five years as provided by the Act.'

The Commission of Appeals in the recent case of State of Texas v. Angelina County, not yet reported, likewise struck down as unconstitutional Senate Bill No. 89, Acts of the 46th Legislature which sought to remit State taxes to certain East Texas Counties to reimburse them for their loss of revenues due to large purchases of land in those counties by the Federal Government, "because violative of that provision of Section 6 of Article VIII of the Constitution which inhibits a Legislative appropriation for a longer time than two (2) years."

In Friedman v. American Surety Co. of New York, decided April 9, 1941, not yet reported, wherein the constitutionality of the Texas Unemployment Compensation Commission Act was sustained, Justice Critz speaking for the Supreme Court declared:

"Still discussing the question as to whether this Act violates Section 6 of Article VIII of our State Constitution, we are of the opinion that, even if it should be held that such constitutional provision applies to the fund here involved, that fact would not invalidate the entire Act. The Legislature can comply with the above Constitutional provision by making an appropriation each biennum of the money in the fund for the purposes for which it was collected, as defined by the Act." (Underscoring ours)

The foregoing authorities indicate that that portion of subparagraph (1), Section 2, Article 20 of House Bill No. 8

627

Honorable J. S. Murchison, Page 8

which declares that "there shall be transferred and credited to such fund the sum of Four Hundred Thousand Dollars ($400,-000) for each fiscal year thereafter" may not be construed to be an appropriation, because to do so would be a violation of Section 6 of Article VIII of the Texas Constitution in that it is not limited to two (2) years.

It is true that the first portion of subparagraph (1) is limited to time so as not to conflict with Section 6 of Article VIII of the Constitution, yet other difficulties present themselves if we attempt to construe as an appropriation this first paragraph of subparagraph (1) which reads:

> "There shall be appropriated and allocated, transferred, and credited to a special fund in the Treasury, to be known as the 'Blind Assistance Fund' for the purpose of providing and administering assistance to the blind in the manner authorized by Senate Bill No. 36, Acts of the Regular Session, 46th Legislature, 1939, such part of Four Hundred Thousand Dollars. ($400,000) as the effective period of this Act for the fiscal year ending August 31, 1941, bears to the entire fiscal year. * * *."

Turning to Senate Bill No. 36, Acts of the 46th Legislature, referred to in the above quoted provision, we find in Section 37a thereof the following:

> "It is provided that the Legislature, out of any moneys allocated to said Fund, may appropriate sums of money sufficient to pay the aid and assistance to needy citizens of Texas and for the rendering of other services as provided for in this Act. It is further provided that, out of said fund, the Legislature may appropriate moneys to be used for the purposes of administering this Act."

This provision would seem to indicate that the Legislature intended separate appropriations to be made for (1) grants of assistance and (2) administrative expenses. You have quoted in your letter, Section 40 of Senate Bill No. 36, which provides:

> "* * * that no grants of aid and assistance shall be made to any needy blind person

> or for the benefit of any dependent and desti-
> tute child until the expiration of ninety (90)
> days after the effective date of any revenue
> Act or Acts that may be passed by the Legis-
> lature making funds available to be used for
> the purposes of granting such aid and assist-
> ance."

This provision is a clear prohibition against the issuance of
any warrants for actual grants of assistance to needy blind and
to destitute children until ninety (90) days after May 1, the
effective date of House Bill No. 8, the Act which provides reve-
nues for such aid. It seems reasonable to suppose that the Leg-
islature intended the ninety (90) day delay to give the State
Department of Public Welfare time to set up its administrative
machinery, and consequently we do not believe that this Section
is any prohibition against the expenditure of money for adminis-
trative expenses, if such expenses have been authorized by
proper appropriations. Subparagraph (1), Section 2, Article 20
of House Bill No. 8 does not distinguish between funds which may
be used for administrative expenses and those which may be used
for actual grants of assistance. In the absence of such designa-
tion, if the first part of subparagraph (1), quoted above, were
to be construed as an appropriation, it would authorize the ex-
penditure of all of the money therein provided prior to July
31, 1941, for administrative expenses only. We do not believe
that the Legislature could have intended that all of the moneys
allocated to this fund prior to July 31, 1941, should be di-
verted to administrative expenses, consequently we do not be-
lieve that the first part of subparagraph (1), quoted above,
may be construed as an appropriation for any purpose.

We believe that the effect and purpose of said sub-
paragraph (1) is the same as that of a similar statutory pro-
vision which was construed by Judge McClendon in Johnson v.
Ferguson, 55 S. W. (2d) 153 in the following language:

> "As such allocation we think it had the
> manifest purpose of removing such fund, beyond
> all doubt or peradventure, from the general
> revenue fund of the state and of devoting it,
> but not appropriating it to the stated purpose.
> It served the double purpose of a declaration
> of policy and a direction to the state treas-
> urer that the fund was not to be invaded for
> purposes other than those named in the article."
> (Underscoring ours)

It is our opinion, therefore, that no part of subparagraph (1), Section 2, Article 20 of House Bill No. 8 constitutes an appropriation which would authorize the Comptroller of Public Accounts to issue warrants against the fund therein provided.

Subparagraph (2), Section 2, Article 20, House Bill No. 8, which refers to the "children's assistance fund" is written in identical language to that used in subparagraph (1) so that the same reasoning and authorities apply thereto. We answer your second question, therefore, in the negative.

As indicated above, Section 40 of Senate Bill No. 36, Acts of the 46th Legislature prohibits the payment of any assistance grants to needy blind and dependent children until ninety (90) days after the effective date of the revenue Act. For this reason, unless this provision is amended or repealed, the State Department of Public Welfare may not make payments of assistance grants to needy blind and neglected dependent children prior to ninety (90) days from May 1, 1941. Warrants may, however, be issued against the blind assistance fund and the children's assistance fund for payments of expenses for setting up the administrative machinery to administer these aids as soon as money is appropriated from these funds for such a purpose.

We might add in closing that we believe it much safer to construe any doubts there might be as to whether subparagraphs (1) and (2) constitute appropriations against such a construction because the Legislature is now in session and may easily provide appropriate appropriations. If the Legislature should adjourn without making such appropriations and thereafter our courts should decide in accordance with our conclusions in this opinion it would require a special session of the Legislature to make available the moneys necessary to provide aid to the destitute children and the needy blind.

APPROVED MAY 27, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Walter R. Koch

Walter R. Koch
Assistant

WRK:RS

